# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GENE PEOPLES and** | **)** | |
| **ESTHER PEOPLES,** | | |
| | **)** | |
| **PLAINTIFFS,** | | |
| | **)** | |
| **VS.** | **)** | **2:11-cv-3788-JHH** |
| | **)** | |
| **PROPERTY & CASUALTY** | | |
| **INSURANCE COMPANY OF** | **)** | |
| **HARTFORD, a foreign corporation,** | | |
| **HARTFORD FIRE INSURANCE** | **)** | |
| **COMPANY, a foreign corporation,** | | |
| | | |
| **DEFENDANTS.** | **)** | |

## MEMORANDUM OPINION AND ORDER

The court has before it the Motion (Doc. #22) for Summary Judgment filed by Defendant Property & Casualty Insurance Company of Hartford ("Hartford") on November 1, 2012. Pursuant to the court's order of November 2, 2012 (Doc. #15), the Motion (Doc. #22) for Summary Judgment was deemed submitted, without oral argument, to the court for review as of December 10, 2012.

## I.  Procedural History

Plaintiffs Gene and Esther Peoples commenced this action on October 31, 2011 asserting claims for breach of contract (Count One) and bad faith (Count Two) against Defendants Property & Casualty Insurance Company of Hartford ("Hartford")

and Hartford Fire Insurance Company.[1]  Plaintiffs allege that their claims arise out of covered wind, water, and/or weather damage to their residence at 500 Birmingham Avenue, Trussville, Alabama 35173.  (*See generally* Compl.).  Defendant Hartford's Motion (Doc. #22) for Summary Judgment asserts that no genuine issue of material fact exists and that Defendant Hartford is entitled to judgment as a matter of law.

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the Motion (Doc. #22) for Summary Judgment.  On November 1, 2012, Defendants submitted evidence (Doc. #24, Exhs. A, B, C) in support of the Motion (Doc. #22) for Summary Judgment and also filed a supporting brief (Doc. #23).  Plaintiffs Gene and Esther Peoples filed a brief (Doc. #26) in opposition to Hartford's motion for summary judgment on December 3, 2012, and on

---

[1] The style of the Complaint does not use the conjunctive "and" when describing Defendants.  They are named as Property & Casualty Insurance Company of Hartford, a foreign corporation, Hartford Fire Insurance Company, a foreign corporation.  The jurisdictional allegations of the Complaint evidence the separate nature of the two Defendants – Property & Casualty Insurance is alleged to be incorporated in New Jersey, and Hartford Fire Insurance Company is alleged to be incorporated in Connecticut.  (*See* Compl., ¶¶ 2, 3).  Property & Casualty Company of Hartford and Hartford Fire Insurance Company collectively responded to the Complaint with an Answer and Affirmative Defenses (Doc. #7).  Hartford Fire Insurance Company denied that it should be a party to the lawsuit because "Plaintiffs did not have a policy of insurance with Hartford Fire."  (Doc. #7, ¶ 3).

In their Report of the Parties' Planning Meeting, the parties noted that they had determined that Plaintiffs possessed no insurance policy with Defendant, Hartford Fire Insurance Company.  (*See* Doc. #11 at 1).  "Therefore, the parties stipulate that the claims against Defendant, Hartford Fire Insurance Company, are due to be dismissed, without prejudice."  (Doc. #11 at 1-2).   Therefore, Defendant Hartford Fire Insurance Company is due to be, and hereby is, **DISMISSED without prejudice** from this action.  In all further filings, the style of the case shall reflect this dismissal.

the same date filed evidence (Docs. #27, 28, Exhs. A-E) in support of the opposition.

On December 10, 2012, Hartford filed a final reply brief (Doc. #30) in further support

of its motion for summary judgment.

## II.   Standards for Evaluating a Summary Judgment Motion.[2]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).   The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings or filings that the moving party believes demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the

moving party has met its burden, Rule 56(a) requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is

a genuine issue for trial.  *Id.* at 324.

---

[2]  Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56 Advisory Committee's Note (2010 Amendments).

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

4

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth

evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**III.**   **Relevant Facts**.[3]

**A.**   **The Hartford Policy**

Plaintiffs Gene and Esther Peoples purchased a Hartford Homeowners Policy, No. 21 RBB120488 CC (the "Policy") to insure their residence located at 500 Birmingham Avenue, Trussville, Alabama 35173.  (*See* Doc. #24, Exh. A).  The effective date of the Policy is August 15, 2009, with an expiration date of August 15, 2012.  (*See* Doc. #24, Exh. A).

The Policy provides in pertinent part:

**SECTION I – PROPERTY COVERAGES**
**A.**   **Coverage A – Dwelling**
    **1.**   We cover:
        a.   The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
        b.   Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
    **2.**   We do not cover land, including land on which the dwelling is located.

\*\*\*\*

---

[3] Where the facts are in dispute, they are stated in the manner most favorable to Plaintiffs, the non-moving parties.  *See Fitzpatrick*, 2 F.3d at 1115.

## SECTION I – PERILS INSURED AGAINST

**A.   Coverage A – Dwelling And Coverage B – Other Structures**

    **1.**    We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

    **2.**    We do not insure, however, for loss:

        **a.**    Excluded under Section **I** – Exclusions;

        **b.**    Involving collapse, except as provided in **E.8** Collapse under Section **I** – Property Coverages; or

        **c.**    Caused by: . . .

            **(6)**    Any of the following:

                **(a)**    Wear and tear, marring, deterioration

**Exception to c. (6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or stream from within a:

**(i)**    Storm drain, or water, stream, or sewer pipe, off the "residence premises;" or

**(ii)**    Plumbing, heating, air conditioning, or automatic fire protective sprinkler system or household appliance on the "residence premises."  This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises," but only when necessary to repair the system or appliance.  However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises."

**Section I** – Exclusion **A.3.**  Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **e.(5)** and **(6)** above.

> We do not cover loss to the system or appliance from which this water or steam escaped.

(Doc. #24, Exh. A at Hartford 0070-0071, 0081-0082).

On or about October 13, 2009, the home of Gene and Esther Peoples was damaged by a tornado.  (*See* Doc. #28, Exh. A, ¶ 3; Exh. B, ¶ 3).  Plaintiffs affidavits assert that "[h]igh winds caused damage to the roof of my house, removing shingles and physically pulling up the roof.  The roof damage caused water leakage into my home.  Additionally, when the roof was pulled upwards from my house, a drain pipe was pulled loose at the joint, causing water from the pipe to leak into the wall of the laundry room, kitchen, dining room, two bathrooms and the den."  (Doc. #28, Exh. A, ¶ 3; Exh. B, ¶ 3).

**B.    The Claim for Water Damage**

On October 14, 2009 Plaintiffs made a claim to Hartford, No. PP008909142, which claim was assigned to Richard A. Davis ("C.R. Davis").  (*See* Doc. #24, Exh. B at Hartford 0108-109).   The date of loss was noted as October 13, 2009.  (*Id.* at Hartford 0108).  According to the notes made by C.R. Davis:

> The insured stated that on the above DOL [date of loss], they discovered that the drain pipe for the washing machine failed (joint separated) causing damage to the walls and flooring in two rooms.  The drain line is 26 years old, PVC pipe that is original to construction.  No recent repair or issues.  The insured son-in-law has made temp[orary] repairs to the system.  Informed the insured that I will be assigning an IA

8

> [independent adjustor] to come out and inspect the damages.  Informed
> the insured that the actual repair to the drain line would not be covered,
> but the damage that occurred would be.

(Doc. #24, Exh. B at Hartford 00109).

The independent adjustor assigned to the claim was Crawford & Company located at 2112 South 11th Avenue, Birmingham, Alabama 35205.  (*See* Doc. #24, Exh. B at Hartford 0112).  Tom Swanson, employed by Crawford & Company, inspected the laundry room[4] of the Trussville home on or about October 19, 2009.  (*See* Doc. #26 at 2-3).  Notes entered after the inspection by Mr. Swanson indicate water damage to a building.[5]  (*See* Doc. #24, Exh. B at Hartford 0112).  In connection therewith, Mr. Swanson prepared an estimate in the amount of $5,401.71 for the replacement cost of the covered damages.  (*See id.*).  Deprecation was applied in the amount of $875.78 for an actual cash value of the claim of $4,525.93.  (*See id.*).  The homeowners had a $250.00 deductible, producing the final recovery amount of

---

[4]  According to the affidavit of Esther Peoples, "an insurance adjuster from Hartford visited my house and inspected only the laundry room.  To my knowledge, this is the only time any insurance adjuster ever inspected the interior of my home."  (Doc. #28, Exh. B, ¶ 5).  Hartford counters that the adjuster examined the entire damaged area.  (*See* Doc. #30 at 6-7).

[5]  "Per handlers investigation revealed loss due to washing machine drain line failed, appears joint became separated over the course of time (per attached photos).  Drain line is original to homes construction of 1984 (25 yrs); no recent repairs or 3rd party involvement.  Drain line behind wall and unaware of its condition over the course of time.  Statute of repose for real property has tolled per venue.  Will close sub file as no sub potential exists per conducted investigation."  (Doc. #24, Exh. B at Hartford 0112).

$4,275.93. (*See id.*). On November 2, 2009, C.R. Davis called Plaintiffs to explain the settlement and explain the coverage that payment was being issued under. (*See id.*). Plaintiffs received a check for $4,275.93 in November 2009. (*See* Doc. #28, Exh. B, ¶ 6).

On February 4, 2010 the Peoples' claim for water damage was reopened. (*See* Doc. #24, Exh. B at Hartford 0113). Notes entered by Hartford state:

> Once the contractor started the repairs, found additional water damage to the sub floor and joists that required to be repaired. This work led to additional drywall, painting. Additional scope amount from the contractor was $2,532.68. The work is completed.

(*Id.*). The scope change to the original claim was then approved by Hartford as covered damages and an additional check was issued to the Peoples on February 4, 2010 in the amount of $3,407.46, constituting the depreciation that was held until the replacement was complete ($875.78) plus the amount for the change in scope ($2,531.68). (*See id.*). The Peoples, however, testify that they never received this check from Hartford, despite the fact that the cancelled check has been introduced into evidence by Hartford. (*See* Doc. #26 at 4; *see also* Doc. #28, Exh. B at ¶ 6; Doc. #30, Exh. 3).

**C.     The Claim for Wind Damage**

On December 4, 2009 a new claim was created for the Peoples, claim number PP0009003141, and assigned to Richard A. Davis.[6]   (*See* Doc. #24, Exh. C at Hartford 00114).  The date of loss is indicated as October 22, 2009 and notes from December 4, 2009 indicate that "prior loss history" is not related.[7]

> The insured stated that while on the roof, he noticed damage to the roof that appears to be due to wind.  In addition, there was interior water damage to the kitchen ceiling.
>
> Damages: Possible storm damage to roof/interior water damage
>
> Any Applicable exclusions: TBD

(Doc. #24, Exh. C at Hartford 00115-116).

When Plaintiffs' roof continued to leak, they enlisted Evans Home Improvement ("Evans") to fix the roof.  (*See* Doc. #26 at 6-7; *see also* Doc. #28, Exh. E).  On or about November 20, 2009 Plaintiffs paid Evans $4,905.00 in out of pocket expenses to repair the roof and deck, and to paint damaged walls inside Plaintiffs' home.  (*See* Doc. #28, Exh. E).  Plaintiffs paid Evans an additional $3,745.00 in out

---

[6] Plaintiffs do not dispute that Hartford processed two separate claims – one for wind damage and another for water damage.  However, Plaintiffs assert that on or about October 14, 2009, they filed *one claim* for *both* wind and water damage, *not* two separate claims.  (*See* Doc. #26 at 2; *see also* Doc. #28, Exh. B at ¶ 7).

[7] "This was identified as a separate claim due to the COL.  The initial claim was for acid discharge.  This claim is for interior damage due to the roof leaking.  DOL was confirmed." (Doc. #24, Exh. C at Hartford 00116).

of pocket expenses to replace damaged vinyl flooring and sheetrock, repair and replace damaged floor joists and subflooring, and to install a support beam in the damaged area.  (*See* Doc. #28, Exh. E).  Plaintiffs sent copies of those invoices to Hartford.  (*See* Doc. #26 at 7).

The inspection by the independent adjustor of the Peoples' roof was completed on December 18, 2009.  (*See* Doc. #24, Exh. C at Hartford 00116).  According to the claim log notes, the independent adjustor did not look at interior damage and was instructed to "contact the insured and inspect the interior damage due to the roof leak." (*See id.*).  The independent adjustor, apparently unaware that Evans had done some work on the roof, surmised that "reheating" must have reattached Plaintiffs' shingles.  (*See id.* at Hartford 00117).

On December 28, 2009, Plaintiffs hired Riverside Builders, a Wilsonville, Alabama contractor to repair water pipes and perform other needed repairs. (*See* Doc. #28, Exh. E).  Plaintiffs paid Riverside Builders $5,100.00 in out of pocket expenses, and sent invoices to Hartford.  (*See* Doc. #28, Exh. E).

A January 5, 2010 claim note indicates:

> Deleted roof repair as IA's notes indicate he did not find wind or hail damage on roof.  He indicated NI told him that the roof was "reheated" and shingles have stuck down.  Suggest requesting invoice for roof repairs and then consider paying repairs once received/reviewed.

. . .

> Reviewed IA's estimate with the insured.  He stated that they made temp[orary] repairs to the roof section to the decking, but it will need 7 sq[uare] [feet] replaced and the decking permanently fixed.  The contractor will fax over invoice for the roof repair only.  Initial payment is for the interior water damages.

(Doc. #24, Exh. C at Hartford 00117).  The actual damage to the interior of Plaintiffs' house was determined to be $2,716.52.  (*See id.*).  Depreciation was applied in the amount of $376.04 for an actual cash value of the claim of $2,340.48.  (*See id.*). After the Plaintiffs' deductible of $250.00 was applied, Hartford issued a check in the amount of $2,090.48 to cover the interior damage caused by the roof leak.  (*See id.*). The roof repairs were not covered because Hartford considered the damage to the roof to be the result of "wear and tear."  (*See id.* at Hartford 00118).

On January 25, 2010, Plaintiffs enlisted Wentzell Cabinets, Inc., a Birmingham contractor, to complete final repairs.  Plaintiffs paid Wentzell Cabinets a total of $5,375.00 and forwarded a copy of the invoice to Hartford.  (*See* Doc. #28, Exh. E).

## IV. <u>Analysis.</u>

Plaintiffs contend that Hartford breached its contract of insurance and acted in bad faith when it failed to cover wind, water, and/or weather damage to their home despite the fact that such damage is covered under Plaintiffs' Policy.  (*See generally* Compl.).  Hartford contends that payments made to Plaintiffs were consistent with the

clear and unambiguous provisions of the Policy, and that all claims were properly investigated and all covered losses were properly paid.  (*See* Doc. #22).

The claims are considered herein on Hartford's motion for summary judgment.

## A.     Breach of Contract

A contract of insurance, like other contracts, is governed by the general rule of contracts.  *See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 691 (Ala. 2001).  The elements of breach of contract under Alabama law are: (1) a valid contract binding on the parties; (2) the Plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.  *See Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (citations omitted); *see also State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999).  However, under Alabama law, in the context of an insurance claim, the insured bears the initial burden of establishing insurance coverage by demonstrating that a claim falls within the insurance policy.  *See Pyun v. Paul Revere Ins. Co.*, 768 F.Supp.2d 1157, 1169 (N.D. Ala. 2011) (internal citations omitted).  In other words, in order for there to be a breach of the insurance contract here, Plaintiffs must show that the uncovered portion of their claim(s) was covered by their Policy.

Plaintiffs' position is that the uncovered portions of their claim(s) were improperly denied because that damage was the result of severe weather, not of wear

and tear.  (*See* Doc. #24, Exh. A).  In support of the argument, Plaintiffs assert that

Hartford failed to promptly and properly inspect the property.  (*See* Doc. #26 at 9-10).

Claim notes indicate that an independent adjustor went out to survey the damage to

Plaintiffs' residence on October 19, 2009 (*see* Doc. #24, Exh. B at Hartford 0110) and

again on December 18, 2009 (*see* Doc. #24, Exh. C at Hartford 0116).  On the first

occasion, the independent adjustor inspected only the laundry room of the interior

house despite the fact that claim notes indicate that damage was noted in "the walls

and flooring in two rooms."  (*See* Doc. #24, Exh. B at Hartford 0109; *see also* Doc.

#28, Exh. B, ¶ 5).  On the second occasion, the independent adjustor examined the

roof, *after* some repairs had been made by Evans, and did not inspect the interior

damage resulting from the roof leak, again despite the fact that claim notes from

December 11, 2009 clearly indicate that the insured informed Hartford that, in

addition to the roof damage, "there was interior water damage to the kitchen ceiling."

(*See* Doc. #24, Exh. C at Hartford 0116, 0117).

Of course, in order for the failure to promptly and thoroughly inspect the

damage to be material, Plaintiffs must have enough Rule 56 evidence for a reasonable

jury to conclude that the damage to their home was in fact caused by a severe weather

event and not wear and tear over time.  (*See* Doc. #24, Exh. A at Hartford 0070-0071,

0081-0082).   Plaintiffs have presented affidavits attesting that "[t]he damage

prompting said repair payments was the result of the October 13, 2009 tornado and the high wind speeds resulting therefrom." (Doc. #28, Exh. B, ¶ 7). They filed their claim(s) (whether it be one or two) the day immediately after a severe storm – October 14, 2009. They have notes from a contractor working on repairs that the damage was caused by "wind to roof and interior due to rain coming in." (Doc. #28, Exh. E at 17). But looming is another contractor note attesting that water lines had "busted . . . where rot had caused to break." (Doc. #28, Exh. E at 19).

It is entirely possible that severe weather caused damage to the roof but did not cause damage to the water lines.[8] It is entirely possible that severe weather caused damage to the roof *and* water lines; it is entirely possible that severe weather caused damage to *neither* the roof *nor* the water lines. But with material facts in dispute, these are questions that cannot be answered on summary judgment.[9]

---

[8] Notes from the initial conversation with Gene Peoples reflect that a joint separated in an old drain line, causing damage to the walls and flooring in two rooms. (*See* Doc. #24, Exh. B at Hartford 0109). The initial note states that the damage "appears to be wear/tear" and a later note builds on this concept, saying that the "joint became separated over the course of time." (*See* Doc. #24, Exh. B at Hartford 0109, 0112).

[9] Also interesting is the Peoples' contention that they filed a *single* claim for damages, despite the fact that Hartford processed those claims separately. (*See* Doc. #24, Exh. B at Hartford 0108; Exh. C at Hartford 0114). By processing the claims separately, a reasonable jury might conclude that Hartford purposefully found "normal wear and tear" to avoid coverage for an otherwise-covered weather event. (Doc. #24, Exh. C at Hartford 0116). The flip side to this coin is that a reasonable jury might conclude that the Peoples waited for a weather event to report aging water lines and roofing, understanding that complete recovery would only be afforded for a weather event. These are questions of fact and credibility that only a jury can decide, made even more interesting by the credibility question presented by the issue of the cancelled check that the

Hartford's Motion (Doc. #22) for Summary Judgment on the breach of contract claim is due to be denied.

## B.     Bad Faith

To succeed on a claim for bad faith failure to pay an insurance claim a plaintiff may proceed using two different theories – normal and extraordinary bad faith.  Here, Plaintiffs proceed using both.  (*See* Doc. #26 at 11).

### 1.     "Normal" Bad Faith

To pursue a "normal" bad faith claim, Plaintiffs must prove the following:

(a)     an insurance contract between the parties and a breach thereof by the defendant;

(b)     an intentional refusal to pay the insured's claim;

(c)     the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)     the insurer's actual knowledge of the absence of any legitimate or arguable reason; and

(e)     if the intentional failure to determine the existence of a wrongful basis is relied on, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

---

Peoples claim they never received.  (*See* Doc. #30 at 2-3 and Exh. 3 to Doc. #30; *see also* Doc. #26 at 4).

*Employees' Benefit Ass'n v. Grissett*, 732 So.2d 968, 976 (Ala.1998); *see also Smith v. MBL Life Assurance Corp.*, 589 So.2d 691, 697 (Ala. 1991).   As the Alabama Supreme Court later explained:

> The Plaintiff asserting a bad faith claim bears a heavy burden.  To establish a prima facie case of bad faith refusal to pay an insurance claim, a plaintiff must show that the insurer's decision not to pay was without a ground for dispute; in other words, the plaintiff must demonstrate that the insurer had no legal or factual defense to the claim.  The insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim. A finding of bad faith based upon rejection of an insurers legal argument should be reserved for extreme cases.  The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same.

*Shelter Mut. Ins. Co. v. Barton*, 822 So.2d 1149, 1154 (Ala. 2001) (internal citations and quotations omitted).  In other words, Plaintiffs must show that they are entitled to a directed verdict on the breach of contract claim in order to have the claim of bad faith submitted to a jury.  *See Grissett*, 732 So.2d at 976.  "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the [normal bad faith] claim must fail and should not be submitted to the jury."  *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982).

Plaintiffs cannot meet this heavy burden here.  Hartford has established that it had debatable reasons to deny Plaintiffs' claim – independent adjustors who examined the damage determined that it was due to normal "wear and tear" and not storm rain and winds.  Because Hartford had a debatable reason for denying portions of Plaintiffs' claim(s), summary judgment is due to be granted with regard to the ordinary bad faith claim.

### 2.    Extraordinary Bad Faith

Under the second theory of an "abnormal" bad faith claim, the insured must show: "(1) that the insurer failed to properly investigate the claim or subject the results of the investigation to a cognitive review and (2) that the insurer breached the contact for insurance coverage when it refused to pay the insured's claim." *Simmons v. Congress Life Ins. Co.*, 791 So.2d 371, 379 (Ala. 2000).  In the abnormal case, bad faith can consist of: (1) intentional or reckless failure to investigate a claim, (2) intentional or reckless failure to properly subject a claim to cognitive review, (3) the manufacture of a debatable reason to deny a claim, or (4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim.  *See Singleton v. State Farm Fire & Cas. Co.*, 928 So.2d 280, 283 (Ala. 2005).

In arguing the claim for extraordinary bad faith, Plaintiffs argue that Hartford failed to inspect Plaintiffs damaged roof until December 18, 2009, over two months after the roof was allegedly damaged. (*See* Doc. #26 at 13). "Defendant sat on its hands for over two months, expecting Plaintiffs to endure continued water leaks during that time." (*Id.*). Although the Policy covers damage resulting from high winds, Hartford contends that the damage in question was the result of "wear and tear" not covered by the Policy. (*See id.*).

With such an argument, Plaintiffs bear the burden of presenting "sufficient evidence of dishonest purpose or breach of known duty, *i.e.* good faith and fair dealing, through some motive of self-interest or ill will." *Pyun*, 768 F.Supp.2d at 1172 (quoting *Singleton*, 928 So.2d at 287). But Plaintiffs' submissions fall short of this requirement. There is nothing in the record evidencing a dishonest purpose or motive of self-interest and/or ill will in denying the contested portion of the claim. (*See* Doc. #26 at 12-13). Moreover, the claim file shows that the adjuster attempted to inspect the home on at least two occasions prior to December 18, 2009, but that Plaintiffs needed to reschedule due to medical issues. (*See* Doc. #24, Exh. C at 00115-116). This delay, and the attendant circumstances, is simply insufficient upon which to rest a claim for extraordinary bad faith. Hartford's motion for summary judgment on the extraordinary bad faith claim is due to be granted.

V.    **Conclusion**

For the foregoing reasons, Defendant Property & Casualty Company of Hartford's Motion (Doc. #22) for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Count Two for bad faith is **DISMISSED with prejudice** from this action.   This action will proceed against Defendant Property & Casualty Company of Hartford for breach of contract only.

**On or before May 28, 2013** the parties **SHALL** file a **_joint_** status report with the court indicating: (1) the extent to which the parties have explored the use of a mediator on this remaining claim; (2) the extent to which the parties have engaged in other settlement negotiations; and (3) if necessary, three (3) mutually agreeable dates for a possible settlement and/or pretrial conference before this court as to the remaining claim.

**DONE** this the   18th   day of April, 2013.

_James H. Hancock_

_____
SENIOR UNITED STATES DISTRICT JUDGE